Appellant, you may proceed. Good morning, Your Honors. May it please the Court. My name is Richard Zimmerman. I represent all the plaintiff appellants except for Mr. Kovacs. Here with me is Josh Allison. He represents all the plaintiff and appellants, including Mr. Kovacs. I was not counsel at the District Court, but I enrolled as counsel for this appeal. When this notice of appeal was initially filed, it appealed the judgment dismissing all the claims. But when we filed our appeal brief, we limited the appeal to the LUPTA claim, the Louisiana Unfair Trade Practices claim. And we only are pursuing that claim against the Rouse defendants, not against the developers. And I think all the developers have filed motions to be dismissed from the appeal, and I believe they've all been dismissed. The issue before this Court today is whether plaintiff's claims under the Louisiana Unfair Trade Practices Act, which I will refer to as LUPTA for short, are preempted or prescribed. Izzo filed this suit asserting a claim under LUPTA and for these other cause of action, but like I said, we're only pursuing the LUPTA claim, so that's all I'll be talking about today. This dispute began back in 2013 when the sheriff Let me ask you, was there a claim below that your client just didn't state any claims under LUPTA? Yes, there was. The District Court didn't rule on that. They did not rule on that, Your Honor, but I will say this. The Rouse defendants argued in their brief on this appeal that we did not state a LUPTA claim, and I don't believe that that is before the Court, but in our reply brief, we did respond to that. So it wouldn't be appropriate for us to remand for the District Court to consider in the first instance whether or not any claims were stated under LUPTA? I think that's correct. I think the only issue before this Court is whether the claims that were asserted were preempted or prescribed. Whether a proper claim was asserted under LUPTA I don't think is before the Court because the District Court never ruled on that. Well, these claims were filed all before there was an amendment to the preemption to make it prescription, right? That's correct, Your Honor. The claims were filed before the amendment to the statute. Were they decided before that? The judge dismissed the claims as being preempted before the statute was amended. My client filed a motion for reconsideration or a new trial, which was denied. All that was before the amendment. The other claims that were filed were actually dismissed in July of 2018, and this amendment didn't even become effective until August 1 of 2018. Are you arguing that it's retroactive? Yes, Your Honor. On what basis? Well, there's about six cases now that say that, but the basis for that is that the Louisiana courts say that prescription statutes are procedural, and the general rule is that procedural changes in the law are retroactive. But are preemptive statutes procedural? Well, according to the six cases that I'm referring to, the two that I cited in the brief, and there's been four new ones since I filed the brief, they all say it's a prescriptive period, not a preemptive period, and all six of those cases say that it's retroactive. It's procedural. There's no vested rights. The other side is arguing they had a vested right to assert this defense. I believe that the first decision that came out after the amendment was by Judge Degreville in the Middle District of Louisiana in the Trinity case, and he has a long opinion about all the different arguments that are made here, and in that case, he found that it was procedural. It should be applied retroactively. There was no vested rights, and doctrines such as contra non volentem would apply, and then there was a Third Circuit case out of Louisiana, the Catholic Church case. I forget the exact name of it, and it agreed with him, and we cited both of those cases in our original brief, but we updated our research for today, and there's actually four new cases out since we filed our briefs, and I'll just mention those to you. The four new cases are Hunter's Run Gun Club. That's out of the Middle District of Louisiana, and that's by Judge Dick, who is the judge that dismissed this case based on preemption, and she actually agreed with Judge Degreville and followed everything he said, and then there's another case, Mann v. Alston Contractors, out of the Eastern District of Louisiana. There's the Swivel Reynolds v. Petropoulos case out of the Western District of Louisiana, and there's the Johns v. McBride case out of the Western District of Louisiana. All four of those cases follow what Judge Degreville said. Now, I will mention to you that there is, in addition, a state law case out of the Louisiana First Circuit, CAMSOFT Data, that came out a few weeks ago, and it actually goes the other way. It says that it's a preemptive statute. It doesn't talk about the amendment. It doesn't cite to any of the cases that have come out since the amendment, but it does say it's a preemptive statute. So I wanted you to be aware of that case also. Well, wasn't this litigation in the district court final before the amendment? The amendment, that's correct. The amendment became effective August 1, and the ruling dismissing the remaining claims was dated July 24th. Well, if the cases were completed, even if it is retroactive, it doesn't open completed cases, does it? Well, I believe it does, Your Honor. I wouldn't say that it opens them, but the case is not really final until it's gone up on appeal and there's been a final ruling. And I believe the law is that courts decide cases based upon the law that's existing at the time. And the law that's existing at the time that we're here on this case is with that amendment. Well, is it the time that the case is decided or the time the action on which the suit is filed took place? Your Honor, it's my understanding it's based upon the law at the time that the court rules. At the time that this court rules, it would be based upon the law that exists. If it's retroactive. Yes, Your Honor, if it's retroactive. That's my understanding. I will say this on this issue about, you know, an argument was made in my opponent's brief where they said that my client waived this argument because they did not file a second motion for new trial after the ruling on July 24th. Remember, they did file a motion for a new trial or reconsideration after the ruling on the Luta statute. And they said we should have filed another one and raised this issue at the district court, and we didn't, and they said we waived that argument. I don't think that's correct. There is no case that they can cite that says that. The case that they cite, the Campo case out of the Fifth Circuit, in that case there had been a change in the law. And the party filed a motion for new trial with the court, but they didn't raise that with the district court, which is different than our situation. So I think what that Campo case stands for, that if you file a motion for a new trial and you ask the court to reconsider what it did, you have to advise them about, you know, the change in the law, an amendment. And that's not what we have here. We were, there was a ruling issued on July 24th, and we filed a notice of appeal. And I don't know of any law, any case law out there that says in that situation you have to go file a motion for a new trial and raise the issue of the amended statute with the court. I think you could do that, but I think you can also file an appeal, which is what we did. And, you know, it's not totally analogous, but there is a case from this court, the Aquin Loan Servicing v. Berry case, where there was a change in the law, and the appellant didn't argue that in their original brief. And the issue was whether or not they were going to be allowed to file a supplemental brief to argue that, and this court allowed that to be done. And the other thing I would mention, Your Honors, is that there's a discretionary exception to the waiver rule that applies where a dispute concerns a pure question of law, and a miscarriage of justice would result from the court's failure to consider it. Well, the issue before this court is a pure question of law. It's whether the statute is prescriptive, preemptive, and whether or not contra non volentum or the continuing violation doctrine applies under this statute. So pure questions of law, whether they apply and whether it's prescriptive or preemptive, and under the circumstances of this case. which date you think is the relevant date with regard to the filing of your complaint in this case? Yes. Well, Your Honor, my clients learned about these restrictions in these leases that kept shopping center developers from leasing to my clients. They learned about those in September of 2015 and January of 2016. Well, I thought the complaint said you learned something about it in April of 2015. I think that you may be referring to, Your Honor, that where there was an abrupt refusal to lease to my client, but they didn't actually learn about these leases and the restrictions until they went to the clerk of court's office and they found the leases. And I'm pretty sure that the suit says that that was September. Well, I'm referring to page 35 of the record on appeal, but I'm quoting it says in April of 2015, Izzo's was contacted by a third party and advised that it had been targeted for discrimination and exclusion from Jubin Crossing development. Okay. And so what happened was my client went to the courthouse and they found the leases in September of 2015 and they found another one in January of 2016. That's when they uncovered the leases. But the wrongful act was done when the leases were executed and then they became public record when they were filed in the parish records. Well, they did become public record, Your Honor, but I'm not aware of any case that says a person has an obligation to be running to the clerk of court's office and look and see what's a public record. I think the test for contra non volentum is whether you knew or should have known. And it's our position that our client shouldn't have known about these restrictions and the leases until they found these leases. Now, the court never got to this issue because the court ruled that contra non volentum did not apply because it was a preemptive period of time that the statute set forth. So that issue has never been fleshed out and there's not been any kind of hearing or evidence put on of when my client knew or should have known. All we have is what is in the petition, on the face of the petition. Does the record show what prompted your client to look at the public records? I don't know, Your Honor. There is no evidence that was done. There was no depositions or anything. How long after these leases were filed did your client go to the courthouse and look? Years. I think that some were in 2013 and some in 2015. I don't think my client learned about the leases until years after they were done. So is there a problem with waiting that long? Well, Your Honor, my client had no reason to know or to believe that Rouse's had anything to do with these developers not leasing to them. I mean, the developers didn't tell my clients about the restrictions. No, but the leases are on record and they contain that restrictive covenant. Yes, Your Honor, but is there an obligation on my client's part to go to the courthouse and look at leases between these developers and other parties that they lease to? I would submit that there is not, unless you have some notice that they're doing something to you. And my client had no idea that Rouse's was behind this. It doesn't matter if Rouse's is behind it. If the developer refuses to lease to your client, doesn't that trigger something? Well, it doesn't trigger you to know or should have known that there's an unlawful act taking place between the developer and Rouse's. That's what I would say about that, Your Honor, without more. And I believe my time is up, but are there any further questions? Thank you, Counsel. Good morning. May it please the Court. My name is Brent Berry. I'm here representing Rouse Enterprises and the other Rouse defendants. To clarify the timeline, the first of the leases at issue was executed in June of 2013, on the 5th of June, recorded at that time. That was for the Long Forest property. Jubin's Crossings was approximately two weeks later, June the 19th, again publicly recorded. Jubin's Crossings, as an aside, is the one that the petition states that the Izzo's folks thought they had a deal for the 11th hour of closing, and then there was an abrupt termination. And then they supposedly received a telephone call three years, two years later, I suppose, to say, well, the reason was that there was this restrictive covenant. The final lease was executed and recorded on February the 9th of 2015. This lawsuit, of course, was not filed until April 13th, 2016. And when was the amendment? Was that 2018? Yes. The amendment was actually adopted by the legislature, signed into law on May the 15th, 2018, with an effective date of August the 1st, 2018. At that time, the time that the amendment was adopted, it was made express that we were moving from a preemptive period to a prescriptive period. There were motions to dismiss Steele Penny before Judge DeGravelle. Judge DeGravelle ruled upon those on July the 24th, I believe, even the 25th, and this appeal was obliged the following month. This amendment was hardly a matter of secret. Indeed, the principal case that they rely upon, written by Judge DeGravelle, he released that opinion on August 8th of 2018. This notice of appeal was lodged the following week. Your Honors, there's a number of bases for affirming the court's decision to dismiss this case on the grounds of preemption. Let me ask you, in that connection, let me ask you this. If the determination is that it's prescriptive and we can look to when they discovered the problem, I guess is what we could do if it's prescriptive statute. Is that right? That is correct. All right. And so if the determination is that they discovered it in April of 2015, filing the complaint in April of 2016, would they be fined? Or is it too late? It's still too late, I believe, Your Honor. When you were quoting from the record, I frankly couldn't recall, and I don't know that the petition specifies the specific date in April that they purportedly got this telephone call. I don't think it does. That's why I'm asking that question. Yeah, we've obviously taken no discovery. We never got past the 12B6 standard. So I don't know whether that telephone call, assuming that was what put them on notice, is prior to. . . They filed on April 15th. Is that right? April 13th. 13th. All right. Now, recognize, of course, that even if this is now prescriptive, and even if it is retroactive, the Louisiana Supreme Court has recognized that retroactivity cannot be applied to a specific defendant to either revive a terminated cause of action or to disturb a vested right. And I think that's precisely the situation we're faced with here. In Chance v. American Honda, the first of the three trilogies, but I think they're dispositive of this Court's decision, there a child had suffered permanent disabilities as a result of a product defect. Suit was not filed within the then statute of limitations, one-year statute of limitations. Thereafter, the legislature changed our law to eliminate a prescriptive period for any minor who suffered disabilities as a result of a product defect. Under that statute, suit was filed. Honda successfully secured from the Court of Appeals a determination that because the case, in effect, had been prescribed under the then statute of limitations, the one-year, the subsequent could not be revived. The Supreme Court affirmed that and held that, yes, while prescription may be retroactive for those individual defendants as to whom the defense is vested here, Honda, by the passage of one year, that cannot be disturbed by retroactivity, both as a matter of civilian doctrine and as a matter of Constitutional law. Some decade later, in Thomas v. Roberts, our Court of Appeals extended that same doctrine to preemption, holding that once a preemptive period runs, it then becomes a vested right such that a subsequent change in the law may not undermine or take away that vested right. To eliminate any doubt that simply a change in the legislation is dispositive, in Bourgeois v. A.P. Green, most recent Supreme Court decision of relevance, the question there was whether a subsequent statute that expressly said, this is interpretive and this cause of action never existed, could it eviscerate vested rights. Specifically, the issue there was the Supreme Court that held the plaintiffs had a claim for medical monitoring in connection with asbestos injuries. The following year, the legislature adopted a statute saying, there is no claim for medical monitoring. It is not a remedy. And this is simply interpretive of the statute that existed previously, notwithstanding the Supreme Court's decision holding this cause of action exists. The plaintiffs pursued those claims. The Supreme Court held no. Once the Court interpreted that that claim existed, there was a vested right and the legislature's subsequent action could not undermine that. Now. Counsel, have you read the four cases that we heard about for the first time at argument today? The four new cases interpreting. I have read two of them. So obviously we haven't seen them since we were just alerted to them this morning. But your friend on the other side says that all four of them stand for the proposition that there are no vested rights under this amendment. Neither of these cases address the doctrine of vested rights that I have seen. And I'm referring specifically to the decision in McBride and the decision in Hunter's run gun. Neither of them, to my read, address vested rights. As an aside, in the opening argument, we were told that Judge De Gravels had specifically held that vested rights had no application. I've read that opinion with great care and I see no discussion with it. Indeed, footnote seven of that opinion makes it plain that Judge De Gravels could not have found vested rights because he didn't believe that the claim was barred whether subject to preemption or prescription. There was nothing to vest. Here, in contrast, we believe that as a matter of preemption, and as Judge Dick held before she refused herself, preemption applied with respect to the first two acts by no later than 2014, with respect to the last act no later than 2016. That was the ruling that Judge Dick reached in the spring of 2017. Which leads me, I think, to the other point the Court must be cognizant of. The reality here is there has been no mention made of this theory, of this claim whatsoever to the District Court. And we submit under those basings this Court can properly recognize this was weighed. There was no position taken on this. And as a result, nothing was sustained for purposes of appeal. Indeed, in response to the original motion dismiss, there was no suggestion that the Court should view this as a prescriptive period, subject to contra non volendum. On the contrary, the defense was simply first that they didn't know, which took them nowhere, but that this was a continuing tort. And therefore, preemption could not apply. That was in response to the first motion dismissed. Judge Dick rejected that. There was then a motion for reconsideration. Again, no suggestion that prescription rather than preemption applied. Indeed, it was acknowledged that preemption applied. Judge Dick rejected that motion for reconsideration. That, of course, was all in 2017. And again, in the motion for reconsideration, the argument was that you had a continuing tort. Continuing tort. That's correct. And Judge Dick correctly recognized continuing tort under Louisiana law refers to multiple acts, not a single act as to which there may be alleged injury thereafter. And she recognized we have three acts here. We have three leases that were accorded. And the fact that they may bar future involvement is not a continuing tort. The acts all occurred in 2013 and 2015, respectively. We then had the first of the two motions to recuse, which basically argued in substance that there must be some animosity towards counsel because this interpretation of the statute was so harebrained, I think was the term, that Judge Dick must be biased. Needless to say, it was denied. But there was no suggestion again that prescription applied. We go then to a series of motions to dismiss in the fall of 2017. Again, this issue was not raised. The amendment comes in in May. The issue is not raised. Indeed, this issue is first raised on appeal. We submit under those circumstances this court can correctly hold it was not maintained and was effectively waived. Your Honor, I have failed to understand since the initiation of this case how filing restrictive covenants, which are common in shopping center leases, represents the sort of immoral, unethical, unscrupulous, or fraudulent conduct condemned by the loophole. But we don't need to get there. We don't need to get there. The reality is this case, under the law that then existed, was perempted. Peremption involves the extinguishment, extinguishment of the cause of action under the New Zealand law. That was extinguished, and there could be no further claim. That cannot be disturbed by the thereafter determination that prescription should apply. Finally, in any event, I think this court can simply shut this down by recognizing the only way this court can rule on this is if these plaintiffs had put the issue before the district court, which by their own admission, they failed to do. Unless the court has additional questions, I'm prepared to cede the balance of my time. Thank you, counsel. Rebuttal. Just a few things, Your Honor. I spent all of my time a minute ago talking about prescription versus peremption and contra-non-voluntum. I didn't really speak about the continuing violation doctrine, so I wanted to, counsel brought that up, I wanted to speak about that. That was argued in the court below, and the district court judge found that it did not apply. We believe that it does apply, and we plead in the lawsuit that the discrimination and restrictions that are aimed at Izzo's are continuing. The cases say that a continuing violation is one in which the operating cause of injury is continuous, giving rise to successive damages. Well, the operating cause of injury in this case are the leases and the covenants that restrict the developer from ever leasing to my client. And those restrictions and those violations of Rouse's duty not to prohibit others from competing or engaging in business, those happen every single day. They became effective on the day the leases were signed. They're effective a year from now. But how is it happening every single day? They made a decision. Apparently it only takes one decision. Our decision is going to be we're not going to agree that we're going to lease space in any place where you will also be leasing space to Izzo's. That's just one decision, isn't it? Your Honor, it's a decision that applies for the next 25 or 30 years, however long that lease is. My client can never go into that shopping center. And not only does it apply to Izzo's, these restrictions apply to the owners of Izzo's. It applies to their affiliated businesses. I mean, Rouse's is out to not only punish Izzo's, but they're out to punish the owners and any other businesses that they own. And so if these other businesses try to go in there next year, they can't. Any business owned by the owners of Izzo's can never go there the way these restrictions are written. But there's only one act, and that's the restrictive covenant when it's filed. The fact that it's 10 years or 20 years or 30 years doesn't make it continuing under the law of Louisiana on what constitutes a continuing charge. Well, Your Honor, I know that that's what the other side is arguing, but I disagree with that. I think that the act is continuing. The act that prohibits my client from ever going into those shopping centers is a continuing act. And it applies to my client for years and years to come. It's not just a one-time act that my client can't go into that shopping center today. It's an act that keeps my client from going into that shopping center for however long that lease is in effect. So I think it's a continuing act. And, I mean, I don't know how else to say it, but it's- What's your best case? Well, it is my best case, and I think it's right. I just, I find it- But that is not a case. Sir? Give us a case on continuing tort that would support this argument about the covenant in this lease. Well, there is no case out there that deals with a lease like this that has- No, but there are cases that deal with continuing torts. Yes, they are. If you've been cited to one that doesn't, you don't have any that do. Your Honor, I have cases that say a continuing violation is one in which the operating cause of injury is continuous. And what is the operating cause of injury in this case? It's the restrictions in the lease. I have cases that say that, and we cite those in our brief. What would be the operating cause of injury in this case if it wasn't the restriction in the lease? I mean, that's what's causing it. And, you know, Rouse's is maintaining this lease. They continue to pay the rentals on it. They continue to have a shopping center there. So they're continuing to do things to maintain this lease and keep this restriction in place. So it's your position that as long as that lease is in effect, there is no prescription or preemption? That's correct, Your Honor. There are cases out there that say that under the continuous violation doctrine, the time period doesn't start to run until the violation ends. And I think that's what should apply here. All right. Thank you, Counsel. Thank you. The Court will take this matter under advisement. We're going to take a ten-minute recess at this time.